## In re BOSE CORPORATION.

### Appeal No. 84–1592.

United States Court of Appeals, Federal Circuit.

Sept. 9, 1985.

---

Charles Hieken, Boston, Mass., argued for appellant.

John W. Dewhirst, Associate Sol., U.S. Patent and Trademark Office, Arlington, Va., argued for appellee. With him on brief was Joseph F. Nakamura, Sol., Washington, D.C.

Before NIES, NEWMAN and BISSELL, Circuit Judges.

NIES, Circuit Judge.

Bose Corporation appeals from the decision of the Trademark Trial and Appeal Board affirming a refusal to register a design shown in application Serial No. 127,-803 on the Principal Register as a trademark for "loudspeaker systems." The basis for PTO action is that the design is functional and, therefore, cannot serve as a mark for the goods. We affirm.

## I.

### Background

Application Serial No. 127,803 has had a long and tortuous prosecution history, which will be discussed in part in connection with a question of this court's jurisdiction over a portion of the board's decision. Briefly, Bose filed the subject application on May 24, 1977, which includes a drawing for a five sided speaker enclosure, claiming use "as early as September 1976" of the following design:

The application contains the following description and claim of distinctiveness:

The mark comprises an enclosure and its image of substantially pentagonal cross section with a substantially pentagonal-shaped top parallel to a substantially pentagonal-shaped bottom and has become distinctive of applicant's goods as a result of millions of dollars worth of loudspeaker systems having been sold under applicant's similar registered trademark registered September 10, 1974, Registration No. 992,982.

The design mark shown in Reg. No. 992,-982 is the following:

The board, in a decision reported at 215 USPQ 1124 (1982), found that the new design was functional and, therefore, unregistrable subject matter. It did not reach the question of whether the design might have acquired distinctiveness. In a first appeal to this court, the case was remanded for a determination of the latter issue. On remand, Bose's proffers of additional evidence on the issue of functionality and on the issue of distinctiveness were refused. In a decision reported at 216 USPQ 1001 (1983), the board found that the design had acquired distinctiveness, but that such significance was merely "de facto" public recognition. Overall, the board continued to hold that the design was "functional" under the standard set out in *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 213 USPQ 9 (CCPA 1982).

Bose seeks to overturn the board's decision on the merits in this appeal or to obtain a remand for consideration of additional evidence on the functionality issue. Before the merits are addressed, however,

it is necessary to consider a challenge made by Bose to the composition of the board which rendered the first decision and a counter challenge by the Solicitor to our jurisdiction over the latter issue.

## II.

### Validity of Board Decision

Bose asserts, as a preliminary matter, that the board's decision in this appeal is invalid because of defective procedures following a change in members of the board.

The first board decision dealing with functionality was signed by three board members, only two of whom were on the three member panel which had heard the oral argument. The third signatory replaced the original third panel member who resigned shortly after the argument. Bose was unaware of the change in composition of the panel until receipt of the decision. Bose immediately moved for rehearing on the ground, *inter alia*, that the new panel had not "heard" the case, and, therefore, had no authority to decide it. The substitution of one member for another after the oral argument, per Bose, violates the "spirit" of 15 U.S.C. § 1067, insofar as the statute requires, in pertinent part:

> Each case shall be *heard* by at least three members of the Board, *the members hearing* such case to be designated by the Commissioner. [Emphasis added.]

Bose interprets the requirement for the case to be "heard" by three board members as a right given to an appellant to oral argument before the three members who render the decision. While conceding that a case can be decided without oral argument, Bose argues that a party who has requested oral argument should have the option of rearguing before a newly constituted panel or of proceeding on the basis of the record.

The board found, from analogy to cases where there was an unavoidable change in the judge during court proceedings, that it must, as an adjudicatory body, have discretion (absent an express statutory direction to the contrary) in handling the matter of substitution of one member for another who resigned during proceedings. Exercising such discretion, the board concluded that Bose's objections were without merit, and that argument before the reconstituted panel was not necessary. Following that decision, Bose promptly sought review by filing a petition to the Commissioner of Patents and Trademarks under 37 C.F.R. § 2.146. In ruling on that issue, the Assistant Commissioner (acting for the Commissioner) held that "the Board did not commit clear error or abuse its discretion" by substituting a board member and not allowing reargument. Bose has noticed an appeal from that decision, as well as from the decision by the board.

The government maintains that the Commissioner's decision contains no reversible error and, as an initial matter, questions the jurisdiction of this court to review a decision of the Commissioner. According to the solicitor, 15 U.S.C. § 1701 provides jurisdiction in this court to review a decision of the Commissioner on trademark matters only with respect to decisions under 15 U.S.C. §§ 1058 and 1059,[1] which do not include decisions relating to composition of the board.

■ On the jurisdictional question, Bose urges that, having properly appealed here from a final decision of the board, it is entitled to raise the issue of whether the board was properly constituted under the statute. On that issue, in view of the circumstances in this case, we agree with Bose. As will become apparent, the solicitor confuses jurisdiction over the Commissioner with jurisdiction over the issue.

Section 21(a)(1) of the Lanham Act, 15 U.S.C. § 1071(a)(1), provides, in pertinent part, for a right of appeal to this court as follows:

> An applicant for registration of a mark . . . who is dissatisfied with the decision

---

**1.** These sections relate to decisions of the Commissioner with respect to: (1) filing a declaration of use to maintain a registration, and (2) filing of a renewal.

of the Commissioner or Trademark Trial and Appeal Board, may appeal to the United States Court of Appeals for the Federal Circuit. . . .

■ Under our precedent, the Solicitor is correct that the above statute does not provide a right of appeal generally from decisions of the Commissioner but rather such right is limited to those decisions relating to affidavits of use or to renewals. *See, e.g., In re Holland American Wafer Co.,* 737 F.2d 1015, 1018, 222 USPQ 273, 275 (Fed.Cir.1984). The reasons behind this interpretation are fully explained in *In re Marriott-Hot Shoppes,* 411 F.2d 1025, 1028, 162 USPQ 106, 109 (CCPA 1969), which review was denied, and will not be repeated here. As held therein, an appellant's remedy against the Commissioner is generally by way of mandamus in district court. *See also In re Makari,* 708 F.2d 709, 218 USPQ 193 (Fed.Cir.1983); *In re Wiechert,* 370 F.2d 927, 938, 152 USPQ 247, 255 (CCPA 1967). However, this case presents the type of situation specifically left open by the *Marriott-Hot Shoppes* decision. As stated therein:

> Appellant's brief argues that we have *jurisdiction* to decide whether the three-member panels of the board had or have *jurisdiction* to hear the ex parte appeals—in the sense of being legally-constituted boards. While we might be able to reach that question, if properly raised, in an appeal to us from one or more *board* decisions *on the merits* of the applications, *In re Weichert,* 370 F.2d 927, 54 CCPA 957 (1967),[5] appellant has made it amply clear that this is not such an appeal; in fact, there is as yet no final board decision in any of the three applications, so far as we are advised. [Emphasis in original.]

---

[5] Appellant's appeal brief herein incorrectly construes the action of the majority in *Weichert.* It ignores two of the three reasons why we refused to consider the legality of the Board of Appeals panel, viz., that the issue was not raised on appeal and though raised in the Patent Office it had been abandoned by failure to argue it. The third reason was analogous, in a patent case, to the basis of our decision herein, lack of jurisdiction to hear appeals from deci-

sions of the Commissioner on petitions. We, the *Weichert* majority, did not, as appellant says, hold that we cannot consider the question of the lawfulness of a Patent Office board because its composition is determined by the Commissioner.

411 F.2d at 1029, 162 USPQ at 110.

In the present case, an appeal has properly been taken from a final decision of the board. The question of the propriety of substituting a member in the deciding panel underlies the validity of that decision. Thus, it is appropriate for this court to determine whether a valid decision is before us before addressing the merits of that decision. The matter of the board's composition is logically related to, indeed, inseparable from the merits and can be raised in the appeal from the board's decision. No basis for questioning our jurisdiction over the issue is asserted, only our jurisdiction over the Commissioner. Nor is it asserted that it was necessary to petition to preserve the issue for review. Thus, had there been no petition, we would not hesitate to resolve the board composition question. As the Commissioner merely affirmed the board, we do not need to hold specifically that his decision is before us to address that issue. Accordingly, we determine only that, under the circumstances here, the petition has no effect on our jurisdiction to determine the validity of the board's decision.

■ Turning to the validity of the board's decision, we hold that there was no error in substituting a board member without allowing reargument. The statutory requirement that a case be "heard" by three board members means *judicially* heard, not *physically* heard. Appeals are routinely heard in a judicial sense with no oral argument.

Bose's assertion of lack of due process ignores the nature of an *ex parte* proceeding before the board. There is no *de novo* hearing in appealing an examiner's refusal to register. Rather, the question is whether or not, based on the record before the examiner, the examiner's action was correct. *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) cited

by Bose, which concerned a hearing to receive evidence, as well as argument, has no applicability here.

Further, appellant does not assert that points were made at the oral argument of which the substitute board member would not have been aware. Indeed, because the appeal to the board is a review based on the record established before the Examining Attorney, it is difficult to see how a "new" position could be legitimately developed at the stage of oral argument.

Thus, we see no legal error in the board's interpretation of the statute. The board is not required by the statute to grant oral argument in any case. There is no more reason for this court to mandate an oral argument in this case than in one where a request for argument was simply denied in the first instance. Bose advances no more than a technical claim of procedural error, without showing any harm. That in itself is sufficient reason to uphold the validity of the board's decision. Under such circumstances, we cannot say that the board abused its discretion in refusing re-argument.

## III.

### *Merits*

■ This case raises anew the question of the functionality of a design sought to be registered as a trademark. The principal arguments of the parties are directed to whether the five-sided feature of the subject speaker enclosure design is or is not functional under the standard set forth in *In re Morton-Norwich, supra.*

In *Morton-Norwich*, the court had before it the question of functionality of a container configuration sought to be registered as a trademark for spray starch, soil and stain removers, spray cleaners, and general grease removers. In holding that the appearance of the container was not function-

al, and, therefore, was registrable subject matter, the court concluded that the design was not one of the best or few superior container designs available for packaging such goods. Recognition of exclusive rights in the particular design, thus, would not impede competition in like products.[2]

While the *Morton-Norwich* case dealt with a container design and the present appeal deals with a product design, the principles set forth in *Morton-Norwich* are equally appropriate for resolving questions of registrability of product shapes. However, there is one significant difference between the instant case and *Morton-Norwich*. In *Morton-Norwich* all major components of the overall design were asserted to be and were found non-functional. Thus, the design as a whole was held to be primarily non-functional. The opinion did not treat the situation where only one characteristic of an overall design is relied upon as the basis for asserting that the overall design is capable of serving as a trademark. Here, Bose candidly acknowledges that, except for the substantially pentagonal shape[3] of the top and bottom surfaces of its speaker enclosure created by an angled rear portion, there is nothing out of the ordinary in the design by which the public could or would identify the speakers as those of Bose and distinguish them from goods of others. Thus, we need only consider whether the angled back, which gives the enclosure its substantially pentagonal shape, is functional in the sense of "utilitarian" as defined in *Morton-Norwich*. If this feature is functional, it follows that the design as a whole is functional.

### A.

In reaching its conclusion that the subject design is functional, the board began by considering whether the configuration of Bose's loudspeaker was or was not dic-

**2.** This standard has been followed in *New England Butt Co. v. ITC*, 756 F.2d 874, 877, 225 USPQ 260, 262 (Fed.Cir.1985); *In re Smith*, 734 F.2d 1482, 1484, 222 USPQ 1, 3 (Fed.Cir.1984); *In re Teledyne Industries*, 696 F.2d 968, 971, 217 USPQ 9, 11 (Fed.Cir.1982).

**3.** This description of the design is somewhat questionable because the front edge of the subject design is bowed. Accordingly, we are aware that this term is being used loosely.

tated by functional or utilitarian considerations as an integral part of the sound system itself. Because of the laws of physics that the size and shape of any loudspeaker enclosure influences performance of the system in reproducing the sound, the board started with the proposition that the shape of any speaker enclosure possesses utilitarian characteristics, i.e. it is functional in a *de facto* sense.

The board correctly did not end its inquiry at that point. Rather, it went on to determine whether there were utilitarian reasons for the five-sided feature of the Bose speaker. The following analysis by the board will give the reader a better understanding of the technology involved:

Unlike conventional loudspeaker systems which feature one or more drivers mounted on the front or other sides of a rectangular shaped enclosure, the shape of applicant's goods is dictated by the fact that eight of the nine 'drivers utilized in the system are mounted on two angled baffles at the back of the enclosure (while only one speaker is mounted at the front). The functional reason for such design is explained, indeed featured, in applicant's promotional materials. As an illustration, we find in the materials submitted by applicant the following description of the features of the Bose 901 Series III loudspeaker:

"The Bose 901 Series III is designed to use the wall of your listening room that is behind the speakers to simulate the much larger stage wall behind the instruments in a live performance. The 901 Series III accomplishes this by using nine matched full-range loudspeakers in each enclosure. *Eight of these speakers are directed at selected angles toward the rear wall and one is directed toward to listener.*

*By reflecting most of the sound from the rear wall, the 901 is able to create, in the relatively small space of a living room, the proportion of reflected to direct sound that is heard in the larger environment of a live performance. This design is responsible for the sense of spaciousness*

*and presence that is immediately apparent* when listening to the 901." Brochure received March 24, 1978, emphasis ours.

"The number and size of drivers is directly related to the manner of their deployment in the *specially shaped enclosure.* that is to say, only one driver faces the front, while eight face the rear which consists of two angled panels. The effect of this arrangement is to permit only one driver to radiate directly into the listening area, *while the energy from the remaining eight drivers is reflected from the rear and side walls of the room.* This dispersion creates a high ratio of reflected to direct sound, such as is experienced at a 'live' performance...." Modern Recording December/January 1977, emphasis ours.

It is obvious that · if the back of a conventionally shaped speaker cabinet is replaced with two angled panels, this results in a pentagonally shaped enclosure. 215 USPQ at 1126 (emphasis in original).

Bose continues to assert that, with additional supports for a rectangular top and bottom and with acoustically transparent material, competitors could create a loudspeaker system which would duplicate Bose's in performance without copying the appearance of Bose's speakers. The board reasoned, however, that the availability of other forms or shapes does not detract from the functional character of the subject configuration, particularly where the configuration sought to be registered is "the preferred or a superior design," citing *In re Honeywell, Inc.,* 532 F.2d 180, 189 USPQ 343 (CCPA 1976) and *Morton-Norwich, supra.*

In support of its finding that the configuration of Bose's goods was prescribed primarily by utilitarian (rather than arbitrary or design) considerations, the board looked to the evidence of record which showed that a five-sided speaker *enclosure* (the configuration of which is identical to that sought to be registered) was the subject of

a Bose patent (Patent No. 4,146,745) as part of a speaker system—the matrix of which is claimed in Patent No. 3,582,553. Among the objects of that invention was a compact "ported" cabinet that was "relatively inexpensive and easy to manufacture."

Bose attacks this part of the board's opinion on the ground that the board is not capable of judging technical matters, such as whether the enclosure affects the sound system. Further, Bose argues that an enclosure is not part of a speaker system itself.

The board's judgment that the particular design was primarily utilitarian was based on Bose's own explanations of the advantage of the five-sided *enclosure*.[4] A technical degree is unnecessary to understand that the import of the statements in a utility patent discussing in detail the advantages of an enclosure with port openings in rear angled baffles is that the design is utilitarian. The pentagonally shaped cross-section of the enclosure is part and parcel of the functional, i.e. utilitarian, advantage stated by Bose itself to inhere in the *enclosure* as an element of a speaker system. That another type of enclosure would work equally as well does not negate that this enclosure was designed *functionally* to enhance or at least not detract from the rest of the system. The board did not err in looking to the patents, as it stated, only insofar as the *disclosure* contained "evidence of the functionality of the outline shape sought to be registered as a trademark." *In re Deister Concentrator Co.*, 289 F.2d 496, 501, 129 USPQ 314, 319 (CCPA 1961). *Cf. Cable Electric Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1031 (Fed.Cir.1985) (readability of patent *claims* on structure is not test of functionality for trademark purposes).

Bose argues that the patent is irrelevant and that the only consideration under *Morton-Norwich* is whether others can compete in the speaker market without using a five-sided speaker. In support of its argument, Bose presented evidence that the same functions of the Bose loudspeaker system with a pentagonal enclosure can be performed by a variety of other shaped enclosures with no sacrifice in performance. In other words, the five-sided matrix can be camouflaged. Since, per Bose, others can make speaker enclosures in oval, rectangular, square, and circular cross-section, there is no hindrance to competition.

If the feature asserted to give a product distinctiveness is the best, or at least one, of a few superior designs for its *de facto* purpose, it follows that competition is hindered. *Morton-Norwich* does not rest on total elimination of competition in the goods.

In concluding that the Bose enclosure design is one of the best from the standpoint of performance of the speaker system, we need only believe Bose's own statements.

### B.

As an additional ground for its decision, the board determined that the subject design was utilitarian simply as the preferred or a superior *enclosure* design, that is, apart from its effect on the sound system. In this connection, the board opined that:

> Obviously, a loudspeaker enclosure, structurally like applicant's, having a grille cloth cover other than one which follows the natural lines of the structural configuration of the speaker housing would be more expensive to manufacture. . . .

215 USPQ at 1127.

Bose asserts that these statements by the board are factually incorrect and it sought to submit affidavits to the effect that it would have been easier and less expensive to make the enclosure rectangular. Its efforts to do so were rebuffed.

---

**4.** The evidence of record is replete with Bose material lauding the shape of the enclosure as a functional part of the sound system. See, for example, the portion of the board's opinion quoted *supra,* and additional promotional materials reviewed in the board's opinion. 215 USPQ 1124.

It now requests a remand to require that the board consider the additional evidence.

If we accept Bose's assertion of the cheaper cost of a rectangular enclosure, we, nevertheless, conclude that the decision of the board must be affirmed. As we have frequently said, our function is to review the correctness of the ultimate decisions, not every statement in opinions. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed. Cir.1983).

Whether or not a rectangular shape is in fact cheaper than a pentagonal shape is not determinative. One admitted advantage of the Bose enclosure is the "inexpensiveness" of its manufacture. It is at least within the category of a superior design in this respect.

Further, the matrix of the Bose system is five-sided. Without question, a five-sided matrix could be enclosed in a commercially acceptable circular or triangular or four-sided housing. Such considerations, however, cannot change the utilitarian nature of a five-sided housing for a five-sided mechanism. As stated in *Honeywell*, 532 F.2d at 182, 189 USPQ at 344: "The fact that thermostat covers may be produced in other forms or shapes does not and cannot detract from the functional character of the configuration here involved."

In this respect, this case is unlike *Morton-Norwich* where "an infinite variety" of container shapes remained available to competitors. Other speaker manufacturers do not have an "infinite variety" of cross-sectional shapes from which to choose. On the contrary, the suggestions by Bose of rectangles, triangles, and circles are comparable to the few alternatives available for the design of thermostat covers discussed in *Honeywell*, 532 F.2d at 182, 189 USPQ at 344.

This case is also distinguishable from *In re World's Finest Chocolates*, 474 F.2d 1012, 177 USPQ 205 (CCPA 1973) and *In re Minnesota Mining and Manufacturing*

*Co.*, 335 F.2d 836, 142 USPQ 366 (CCPA 1964) where the shape of the goods themselves, candy bars and cakes of chemical, are infinitely variable. A sound matrix does not have the variability in shape of goods which can be molded into cakes or bars.

Logic dictates that the shape of a speaker enclosure which conforms to the shape of the sound matrix is an efficient and superior design as an enclosure and, thus, *de jure* functional, whether or not it contributes to the functionality of the sound system itself.

## C.

Bose's other arguments, which were discussed at length in the board's opinion, may be dealt with summarily here. We reject its argument that the incontestable status of a registration for another speaker design which has a pentagonal cross-section establishes the non-functionality of that feature in the subject design. Nor do we consider the testimony in a court proceeding, language in a consent decree, or statements by a court in denying a motion for preliminary injunction in connection with that design as somehow controlling on the issue of functionality of the five-sided feature in the subject design.

Bose's rights in the protectability of its registered mark rest on the distinctiveness of the entirety of that design, not individual features thereof.[5] As a simple comparison shows, and as counsel acknowledged, apart from five-sidedness, the old and new designs do not resemble each other. The registered mark comprises not only a pentagonal cross-section but an overhang of the top and a full wrap-around grille cloth which give that design a substantially different appearance from the current design. We see no basis for asserting a right to register the new design because of the registration of the old.

---

5. *See In re National Data Corp.*, 753 F.2d 1056, 1059, 224 USPQ 749, 752 (Fed.Cir.1985) ("The registration affords prima facie rights in the mark *as a whole*, not in any component.") (Emphasis in original).

With respect to the proffered evidence of copying by others to enhance Bose's showing of secondary meaning, such evidence is irrelevant to the issue of functionality before us.

### IV.

*Conclusion*

Bose did not challenge the finding by the board that the essentially utilitarian configuration of its design was not transformed into a registrable trademark by the commonly used features of wood panels and grille cloth. Since the board's finding that the five-sidedness feature of Bose's design is functional is not clearly erroneous, we *affirm*.

AFFIRMED.