The L.D. KICHLER CO.,
Plaintiff–Appellant,

v.

DAVOIL, INC. (d/b/a Quorum
International), Defendant–
Appellee.

No. 98–1488.

United States Court of Appeals,
Federal Circuit.

Sept. 30, 1999.

George L. Pinchak, Watts, Hoffman, Fisher & Heinke Co., L.P.A., of Cleveland, Ohio, argued for plaintiff-appellant. Of counsel was Lowell L. Heinke.

Kenneth C. Hill, Felsman, Bradley, Gunter & Dillon, LLP, of Forth Worth, Texas, argued for defendant-appellee. With him on the brief was Max Ciccarelli.

Before MAYER, Chief Judge, NEWMAN, and LOURIE, Circuit Judges.

MAYER, Chief Judge.

The L.D. Kichler Co. appeals the judgment of the United States District Court for the Northern District of Ohio, *L.D. Kichler Co. v. Davoil, Inc.*, No. 96–CV–2022 (N.D.Ohio Jan. 29, 1998), which granted Davoil, Inc.'s, d/b/a Quorum International ("Quorum"), motion for summary judgment canceling Kichler's trademark Registration No. 1,803,172 ("the '172 trademark") and holding Kichler's "Olde Brick" trademark, Supplemental Registration No. 2,034,607, to be *de jure* functional. Because the district court did not make proper fraud and functionality determinations, we reverse and remand.

## Background

Kichler is an Ohio corporation that sells and designs electric lighting fixtures. On March 4, 1992, Kichler sought trademark

registration for its "racetrack backplate." Used to mount light fixtures on a wall, this backplate has an oval design that differs from previous rectangular backplates. During prosecution, Kichler's president, Barry Minoff, filed a declaration under section 2(f) of the Lanham Act. *See* 15 U.S.C.A. § 1052(f) (West Supp.1999). The section 2(f) declaration stated that Kichler had "substantially exclusive and continuous" use of the racetrack backplate for five years. At the time, there were at least three other companies, including Quorum, that sold similar backplates, described as copies of the Kichler backplate; the volume of sales is unknown. Kichler obtained the '172 trademark on November 9, 1993.

On October 26, 1994, Kichler sought trademark registration for its "Olde Brick" finish. Olde Brick is made of several distinct colors applied to the metal portions of electric lighting fixtures. It has been commercially successful because its weathered or antique appearance, also described as "rust-type," is color-compatible with many interior furnishings. Kichler received Supplemental Registration No. 2,034,607 on January 28, 1997. Subsequently, Quorum began selling fixtures with a finish called "Cobblestone," which Kichler asserts is confusingly similar to Olde Brick.

Kichler sued Quorum on September 16, 1996, alleging design patent infringement, copyright infringement, trademark infringement, and unfair competition. Quorum filed counterclaims seeking a declaration of noninfringement, invalidity of the design patents, cancellation of the '172 trademark, and damages. On September 30, 1997, Quorum moved for summary judgment seeking, *inter alia*, cancellation of the '172 trademark due to Kichler's filing of an inaccurate section 2(f) declaration and a holding of noninfringement of the Olde Brick trademark because it was *de jure* functional.

The district court held that, because other companies were selling racetrack backplates, Kichler's use of the mark was not substantially exclusive. Kichler therefore submitted a false section 2(f) declaration, which warranted cancellation of the '172 trademark. The district court also held that, although color can be registered as a trademark, Olde Brick was *de jure* functional because its color-compatibility made it necessary for competition. Thus, Olde Brick did not merit trademark protection and Quorum's motion for summary judgment of noninfringement was granted.

Kichler subsequently moved for reconsideration, which the district court denied. The parties eventually settled the other counts of the complaint, but allowed Kichler to appeal the trademark judgments.

### Discussion

We review a district court's grant of summary judgment *de novo. See Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773, 34 USPQ2d 1822, 1824 (Fed.Cir.1995). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1401, 43 USPQ2d 1641, 1644 (Fed.Cir.1997) (citing Fed.R.Civ.P. 56(c)). The district court must view the evidence in a light most favorable to the party opposing the motion and draw all reasonable inferences in its favor. *See Gasser,* 60 F.3d at 773, 34 USPQ2d at 1824.

The district court canceled the '172 trademark due to fraud. "Fraud in procuring a ... mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *Metro Traffic Control, Inc. v. Shadow Network, Inc.,* 104 F.3d 336, 340, 41 USPQ2d 1369, 1373 (Fed.Cir. 1997); *see also* 15 U.S.C.A. § 1064(3) (West Supp.1999). Merely making a false statement is not sufficient to cancel a mark. *See Metro Traffic,* 104 F.3d at 340, 41 USPQ2d at 1373. Moreover, "a party seeking cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence." *Id.*

■ The district court held that Kichler filed a false section 2(f) declaration because it did not disclose other companies' use of the backplate. However, there was no analysis of the extent of these sales. The holding, therefore, improperly suggests that *any* use by others, including an infringing use derived from the originator of the mark, precludes an applicant's "substantially exclusive" use under section 2(f).

In *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939 (Fed.Cir. 1984), we affirmed the Trademark Trial and Appeal Board's refusal to register a mark for a shoe tab. Noting the significant prior use of such tabs by other companies, we held that "Levi's use of a tab on shoes has been neither first nor exclusive," thus, it failed to show that its mark was distinctive. *Id.* at 1405, 222 USPQ at 942. The district court concluded that use of the racetrack backplate by three other companies precluded Kichler's "substantially exclusive" use because we stated in *Levi Strauss* that "[w]hen the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful." *Id.* at 1403, 222 USPQ at 940–41.

■ This language must be read in the context of the statute. Section 2(f) declares that prima facie evidence of distinctiveness includes "proof of *substantially* exclusive and continuous use" of a mark for five years. 15 U.S.C.A. § 1052(f) (West Supp.1999) (emphasis added). As the Trademark Manual of Examining Procedure, § 1212.05(b), recognizes: "The five years of use does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim." *See generally In re International Flavors & Fragrances, Inc.*, 183 F.3d 1361, 51 USPQ2d 1513, 1516 (Fed.Cir.1999) ("Although the Manual does not have the force of law, it 'sets forth the guidelines and procedures followed by the examining attorneys at the PTO.'" (quoting *West Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1127 n. 8, 31 USPQ2d 1660, 1664 n. 8 (Fed.Cir.1994))). The district court, therefore, erred in suggesting that *any* use by others is sufficient to preclude an applicant's declaration of "substantially exclusive" use. *Cf. Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1583, 6 USPQ2d 1001, 1010 (Fed.Cir. 1988) (affirming board's rejection of section 2(f) opposition, in spite of evidence that four other companies made similar products prior to registration). Consequently, the grant of summary judgment was improper because there is a genuine issue of fact regarding the extent of the other companies' use—i.e., whether it was inconsequential or infringing.

■ Even if others' use of the backplate was significant, to cancel the '172 trademark for fraud there must also be a showing that Kichler knowingly submitted a false declaration with an intent to deceive. *See Metro Traffic*, 104 F.3d at 340, 41 USPQ2d at 1373. The district court, however, made no attempt to determine whether Kichler had the requisite intent. Therefore, we remand the case so the district court may determine whether there existed significant prior use by others, and if so, whether Kichler knowingly submitted a false declaration with an intent to deceive.

■ The district court also granted Quorum's motion for summary judgment that Kichler's Olde Brick finish was *de jure* functional. Color may be granted trademark protection if it is non-functional and has acquired secondary meaning. *See In re Owens–Corning Fiberglas Corp.*, 774 F.2d 1116, 1121, 227 USPQ 417, 419 (Fed. Cir.1985). A functionality inquiry looks to whether a product feature " 'is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S.

159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (quoting *Inwood Lab., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).

In *Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 32 USPQ2d 1120 (Fed. Cir.1994), we examined the functionality of the color black on outboard motors and held that "[i]f the feature asserted to give a product distinctiveness is the best, or at least one, of a few superior designs for its *de facto* purpose, it follows that competition is hindered." *Id.* at 1531, 32 USPQ2d at 1122 (quoting *In re Bose Corp.*, 772 F.2d 866, 872, 227 USPQ 1, 6 (Fed.Cir.1985)). The use of black on outboard motors was not entitled to trademark protection because "the color black exhibits both color compatibility with a wide variety of boat colors and ability to make objects appear smaller. With these advantages for potential customers, the Board [correctly] found a competitive need for engine manufacturers to use black on outboard engines." *Id.*

The district court held that because Olde Brick was color-compatible, it was functional under *Brunswick.* Yet, it failed to examine "whether [the use of Olde Brick] as a mark would permit [Kichler] to interfere with legitimate (non-trademark-related) competition through actual or potential exclusive use of an important product ingredient." *Qualitex*, 514 U.S. at 170, 115 S.Ct. 1300. Indeed, while noting evidence of several alternative "rust-type" finishes, the district court acknowledged that "[t]here is a question of fact whether there is a competitive need for others to use the Olde Brick finish." Therefore, a genuine issue of material fact exists, and we remand the case so the district court may make the proper inquiry.

This examination of competitive need "should not discourage firms from creating [a]esthetically pleasing mark designs, for it is open to their competitors to do the same." *Id.*, 514 U.S. 159, 115 S.Ct. 1300; *see also Brunswick*, 35 F.3d at 1533, 32 USPQ2d at 1124 ("[A]esthetic ingredients to commercial success are not necessarily de jure functional.... Color compatibility and ability to decrease apparent motor size are not in this case mere aesthetic features. Rather these non-trademark functions supply a competitive advantage."). Mere taste or preference cannot 'render a color—unless it is "the best, or at least one, of a few superior designs"—*de jure* functional.

There is evidence that many customers prefer Olde Brick and other composite "rust-type" colors. It is not clear, however, that Olde Brick is one of a few colors that are uniquely superior for use in home decorating. Thus, the district court erred in granting summary judgment that Olde Brick was *de jure* functional.

### Conclusion

Accordingly, the judgment of the United States District Court for the Northern District of Ohio is reversed and the case is remanded for further proceedings consistent with this opinion.

### REVERSED AND REMANDED.