**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3436
_____

THREE RIVERS CONFECTIONS, LLC

v.

CHRISTOPHER M. WARMAN, TRADING AND DOING BUSINESS AS ART OF
FUDGE, TRADING AND DOING BUSINESS AS FUDGCO; FUDGETOPIA, LLC

Christopher M. Warman,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-01089)
District Judge:  Honorable Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 22, 2016
Before:  JORDAN, RESTREPO and BARRY, Circuit Judges

(Opinion filed: September 23, 2016)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellee Three Rivers Confections, LLC ("TRC"), filed a complaint alleging thirteen causes of action against Appellant Christopher M. Warman (t/d/b/a "Art of Fudge" and "Fudgeco") and Fudgetopia, Inc., for, inter alia, trademark infringement. The suit arises out of the disputed ownership of the wordmarks "Fudgetopia" and "Fudgie Wudgie," and a related logo mark (collectively the "FW marks"). In an order entered July 29, 2015, the District Court granted TRC's motion for partial summary judgment on its claim that it was the lawful and rightful owner of the FW marks.[1] This appeal ensued. For the following reasons, we will affirm the judgment.

I.

Because the parties are familiar with the facts, we only briefly summarize them here. In 2009, Fudgie Wudgie, L.P. (FWLP), and its general partner, FW Chocolatier, Inc. (FWC) (collectively the "FW entities"), applied for registration of the wordmark "Fudgetopia" and a "Fudgie Wudgie" logo mark. In 2010, the FW entities applied for registration of the wordmark "Fudgie Wudgie." The United States Patent and Trademark Office (PTO) assigned registration numbers to the FW marks. At the time of registration, in 2011 and 2012, Warman was an officer of FWLP, and his then-wife, Christine Falvo, was CEO of the FW entities.[2]

---

[1] Previously, in an order entered September 24, 2014, the District Court entered default judgment against Fudgetopia, Inc.

[2] According to Warman's deposition testimony, "for all intents and practical purposes [he] was the CEO" of FWLP.

Beginning in 2009, FWLP, through FWC, executed a series of four loan agreements, signed by Falvo and secured by FWLP's "collateral," including the FW trademarks. The lenders filed timely UCC-1[3] financing statements with the Office of the Secretary of State of Pennsylvania perfecting their interests in the collateral. TRC subsequently purchased these loans and took assignment of the underlying security interests. TRC re-filed UCC-1 financing statements reflecting its security interests in FWLP and its assets, including the FW trademarks.

In May 2012, Falvo executed an agreement on behalf of the FW entities, through which FWLP acknowledged (1) its liability to TRC in the amount of $2,224, 881.57, stemming from its default on the four loans, and (2) that the amount was secured by the collateral, as described in the UCC-1 financing statements, to which no third party had a superior title. Pursuant to the agreement, FWLP signed a bill of sale conveying all its rights, title, and interest in its collateral to TRC in partial satisfaction of the loans. In June 2012, FWLP, through Falvo, executed a "Trademark Assignment" assigning its rights and interest in the Fudgie Wudgie trademarks, the goodwill of the business, and the right to sue "for any past, present or future infringement" of these rights.[4]

---

[3] All references to the "UCC" are to the Pennsylvania Commercial Code, 13 Pa. Cons. Stat. § 1101 et seq.

[4] In November 2011, another creditor, Sysco Corporation and Sysco Pittsburgh, LLC, obtained a default judgment against Falvo and the FW entities in the Court of Common Pleas of Allegheny County. In August 2012, the FW entities' collateral was sold at a sheriff's sale pursuant to a writ of execution obtained by Sysco. TRC was the highest bidder at the sale and obtained a "Bill of Sale" listing the property, including "All Trade names and trademarks."

3

In August 2012, TRC filed this trademark infringement suit. It moved for partial summary judgment on its claim that it was the "lawful and rightful owner of the Fudgie Wudgie Marks," that Warman and Fudgetopia have "no property or other rights" in the marks, and that transfers of the marks were "lawful, valid and proper." TRC argued that it acquired ownership of the FW marks either by operation of the UCC or as a result of the 2012 sheriff's sale. In response, Warman maintained that he was the owner of the FW marks, that he never assigned them to the FW entities, and, therefore, TRC could not have acquired the rights to the marks. The District Court granted summary judgment on TRC's declaratory judgment claim, holding that the trademarks were lawfully transferred to TRC, and that Warman had no property or other rights in them.[5] Warman filed a notice of appeal, and, subsequently, TRC filed a stipulation of dismissal of the remaining claims.

II.

We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.[6] We review de novo a grant of summary judgment. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

_____

[5] In the same order, the District Court denied Warman's motion for leave to amend his answer and to file a crossclaim.

[6] Although Warman's notice of appeal was premature, it ripened when TRC stipulated to dismissal of the remaining claims and the District Court entered its final order. See Cape May Greene, Inc. v. Warren, 698 F.2d 179, 184–85 (3d Cir. 1983) (holding that a Court of Appeals may decide a premature appeal from a non-final order if an order which is final is entered before an adjudication on the merits).

4

P. 56; Kaucher v. County of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).  We "view the facts and draw inferences in the light most favorable to the nonmoving party," and, as Warman proceeds pro se, we must liberally construe his filings.  Ray v. Township of Warren, 626 F.3d 170, 173 (3d Cir. 2010); Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010).

Under the Lanham Act, 15 U.S.C. § 1115(a), federal registration of a trademark is prima facie evidence "of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce."  Lucent Info. Mgmt., Inc., v. Lucent Tech., Inc., 186 F.3d 311, 315 (3d Cir. 1999).  TRC provided records from the PTO's online database indicating that it was the current owner of the registered FW marks.[7]  We agree with the District Court that Warman did not overcome this presumption because he failed to show that the marks were wrongfully registered.  See Door Sys., Inc. v. Pro–Line Door Sys., Inc., 83 F.3d 169, 172 (7th Cir. 1996) ("The presumption of validity that federal registration confers . . . evaporates as soon as evidence of invalidity is presented.").  Warman first maintained that the Fudgetopia trademark was not used as stated in the registration.  However, FWLP had filed an intent-to-use application pursuant to 15 U.S.C. § 1051(b), which neither relies on nor requires any prior use of the mark.  Rather, within six months of filing (absent an extension), FWLP was required to show that the mark was being used in commerce.  15 U.S.C. § 1051(d)(1); see Zazu Designs v.

---

[7] In addition to the PTO records, TRC provided documents evidencing its assignment of the loans and its security interests in the FW entities' collateral, including the August

5

L'Oreal, S.A., 979 F.2d 499, 503 (7th Cir. 1992).  The PTO approved the registration showing a first use date of December 1, 2011.  As the District Court noted, trademark registration creates "a rebuttable presumption of use as of the filing date."  Id. at 504.  On appeal, Warman argues that TRC never provided proof to rebut his statements that Fudgetopia was not used as registered.  But it was TRC which had the presumption of use by virtue of its registration, and Warman wholly failed to present evidence to rebut it.  Warman's contention that Falvo "confirm[ed] factually that the Fudgetopia mark was not used by the FW Entities" is not born out by Falvo's declaration[8], which does not even reference the FW entities' use of the FW trademarks.

Warman also attacked the validity of the Fudgie Wudgie wordmark ("FW wordmark") and logo, asserting that their registration was procured through fraud.  A trademark infringement claim is subject to the affirmative defense of fraud.  15 U.S.C. § 1115(b)(1); see also L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999) ("Fraud in procuring a . . . mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application.").  For substantially the reasons provided by the District Court, we agree with its conclusion that Warman failed to create a material dispute of fact with respect to his claim that the registrations

---

2012 Bill of Sale.

[8] Warman submitted two declarations by Falvo.  The first "declaration of fact" was properly disregarded by the District Court as it did not state it was made "under penalty of perjury" as required by 28 U.S.C. § 1746.  The District Court properly considered the second declaration – which included all of the information in the first – to the extent that it met the requirements of Fed. R. Civ. P. 56(c).

fraudulently listed the wrong "first use" date or the wrong owner. In particular, Warman

failed to provide sufficient evidentiary support for his claim that he had priority as the

"senior user" of the FW wordmark and that his name should have been listed on the

registration.[9] See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir.

1989) (nonmoving party cannot simply assert factually unsupported allegations to meet

burden at summary judgment).

A "'senior user' is the first to adopt and use a mark anywhere in the country."

Lucent Info. Mgmt., 186 F.3d at 316. Generally, under common law, the senior user's

trademark rights prevail over a subsequent user's rights to the same mark in the same

geographical area. See Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 415 (1916)

(holding that "[i]n the ordinary case of parties competing under the same mark in the

same market, it is correct to say that prior appropriation settles the question."). To

establish ownership as the senior user of the FW wordmark, Warman had to show "not

only that at some date in the past [he] used the mark, but that such use has continued to

the present." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition

§ 16:9 (4th ed. 2016). In particular, he was required to show significant "market

penetration" and a "clear entitlement" to protection of the FW wordmark in a particular

---

[9] We reject TRC's assertion on appeal that this argument should be deemed waived. See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.") (quotation marks omitted). In his summary judgment response, Warman argued that he was the owner of the mark based on prior and continuous use, and the District Court's

7

market.  Nat. Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383, 1397 (3d Cir. 1985).

Warman asserted that he created the mark Fudgie Wudgie in 1989, that he has used and controlled the mark since then, and that he has never assigned the goodwill or rights he had in it to the FW Entities.  But his evidence in support of this claim is lacking. He claimed generally that he "used the name for many years" prior to 2006, at which point he and Falvo created a corporate entity − the name of which he could not recall ("It may have been FW Chocolatier LLC.") − which used the mark.[10]  In addition to being vague, this statement undermines his claim that he alone had ownership of the FW wordmark.  The claim is further undermined by the record evidence, including a joint application for registration of the FW logo mark, filed in 2006, listing Warman and Falvo as co-owners of the logomark, and Warman's deposition testimony, in which he admitted that he filed the 2006 application as "50/50 joint owner" of the mark with Falvo, but that later "somehow some way the trademark was registered under the Fudgie Wudgie name instead of [his] name and [Falvo's]."

---

Memorandum Opinion (at pgs. 21-25) specifically addressed it.

[10] Falvo stated in her affidavit that, *to the best of [her] knowledge,* Warman was using the FW wordmark "as part of his product line and marketing" as early as 1989.  As the District Court noted, however, this conditional statement is insufficient to satisfy the "personal knowledge" requirement of 28 U.S.C. § 1746.  See Lopez–Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000) (holding that affidavit submitted in opposition to motion for summary judgment which stated that "'it is correct in all its parts to the best of my knowledge'" was "insufficient as a proffer of evidence because affidavits submitted in opposition to a motion for summary judgment must be based on the affiant's personal knowledge").

8

The only documentary evidence Warman provided in support of his senior user claim was a copy of the Pennsylvania Department of State listing for "Fudgie Wudgie Junior," a business created in 2006 and owned by Jeremy Gabriel. Warman asserted that in 2003, he licensed Gabriel to use the FW wordmark, and, in 2006, he licensed Fudgie Wudgie Junior to Gabriel. Falvo also stated that Warman "allowed use of the Fudgie Wudgie name and trademark" to Gabriel in 2006. Notably absent from the record is any evidence tying Gabriel's Fudgie Wudgie Junior business directly to Warman, such as a licensing agreement. As the nonmoving party, Warman had to raise more than a mere "scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Absent further evidence of ownership, such as market penetration, from which a reasonable jury could conclude that Warman owned the FW wordmark and logo as a senior user, summary judgment for TRC was warranted.[11]

Warman argued alternatively that the Fudgetopia trademark was abandoned. To establish abandonment, he had to show non-use and intent to abandon. 15 U.S.C. § 1127; U.S. Jaycees v. Phila. Jaycees, 639 F.2d 134, 139 (3d Cir. 1981) ("abandonment, being in the nature of a forfeiture, must be strictly proved"). Warman failed to provide evidence

---

[11] Even assuming Warman could establish common law rights to these marks, it is unclear whether they would have merged with those of the FW entities. See Metro Traffic Control, Inc. v. Shadow Network Inc., 104 F.3d 336, 340 (Fed. Cir. 1997) (noting that companies which operate as one entity may be treated as such for trademark purposes). Indeed, Warman stated in his response to the summary judgment motion that the 2006 corporate entity, which he co-owned with Falvo, "was ultimately merged into FW entities." As the District Court noted, then, it is possible that the FW entities were owners of the marks under a predecessor in title theory. See 15 U.S.C. § 1127.

9

of either requirement. In support, Warman referred to a meeting during which Falvo allegedly stated that the "Fudgetopia mark was [Warman's] and that she didn't care about it, that [Warman] had created it. Fudgie Wudgie was not using the mark and had no intent to use the mark . . ." Although he asserted that these statements were memorialized in a document, he failed to make the document part of the record. The District Court determined that Warman's account of these statements is insufficient under Rule 56(c) because it is based on inadmissible hearsay. On appeal, Warman argues that because Falvo made the statements while CEO of the FW entities, the District Court should have considered them admissible as admissions by a party-opponent under Fed. R. Evid. 801(d)(2)(A). However, statements made by a predecessor in interest or employees of a predecessor are not admissible under Rule 801(d)(2)(A). See Calhoun v. Baylor, 646 F.2d 1158, 1162-63 (6th Cir. 1981); Huff v. White Motor Corp., 609 F.2d 286, 290-91 (7th Cir. 1979). Accordingly, the District Court properly declined to consider the statements as evidence.

Warman also averred generally that he could establish presumptive abandonment based on TRC's alleged non-use of the trademarks. Falvo stated in her February 2015 declaration that, "to the best of her knowledge," TRC was no longer producing fudge or any other product in Pittsburgh, and had terminated almost all of its staff as of December 2014. As noted, supra, a statement conditioned as such is insufficient under 28 U.S.C. § 1746. Moreover, even assuming it could be considered, at best it was evidence of

10

recent non-use, and far short of the three consecutive years of non-use required to show abandonment.  See 15 U.S.C. § 1127.

Finally, Warman's allegation that the Fudgetopia trademark was "orally assigned" to him failed on two fronts.  First, "the Lanham Act requires that assignments of federally registered marks . . . be in writing."  3 McCarthy on Trademarks and Unfair Competition § 18:43 (4th ed. 2016); see also Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 150 (3d Cir. 1997) (explaining that trademark which was orally assigned, rather than acquired in connection with the sale of a business or otherwise transferred with the goodwill associated with the trademark, constitutes an invalid assignment in gross).  Moreover, as the District Court noted, the evidence in support of this claim was lacking.  Falvo stated in her declaration that she had emailed corporate counsel to transfer ownership of the Fudgetopia trademark to Warman.  In the email, which was made part of the record, Falvo merely advised counsel that she "would like to transfer the ownership of the trademarks for Fudgetopia" to Warman.  There is no evidence to suggest that any steps were taken, beyond this email, to effectuate the transfer of the trademark.  Accordingly, TRC was entitled to summary judgment.

III.

We now turn to Warman's argument that the District Court erred in denying his motion for leave to file an amended answer and a counterclaim.  We review a District Court's refusal to grant leave to amend a pleading for abuse of discretion.  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

11

After a responsive pleading has been filed, a party may amend its pleading only by leave of court or by written consent of the adverse party, and leave shall be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a). Denial of leave may be justified where there has been undue delay or where amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Warman's motion to amend was filed after discovery had closed, after TRC's motion for partial summary judgment was briefed, and after he had been granted two extensions of time to file his summary judgment response. Warman failed to provide any explanation for the delay. And, as the District Court noted, his proposed counterclaims, which were presented, in part, as arguments against summary judgment, are without merit. Under these circumstances, we find no abuse of discretion.

For the foregoing reasons, we will affirm the judgment of the District Court.