THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: March 31, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

————

*In re Misty Everson and Christine Maynard*

————

Serial No. 97104306

————

Mark Terry of Mark Terry, P.A.,
    for Misty Everson and Christine Maynard.

Joshua Sturman, Trademark Examining Attorney, Law Office 103,
    Stacy Wahlberg, Managing Attorney.

————

Before Lykos, Lavache, and Brock,
    Administrative Trademark Judges.

Opinion by Lavache, Administrative Trademark Judge:

Misty Everson and Christine Maynard, joint applicants,[1] seek registration on the

Supplemental Register of the proposed three-dimensional product design displayed

below, for "pancakes; food, namely, pancakes," in International Class 30.[2]

---

[1] In their appeal brief and the application record, the joint applicants have referred to themselves in the singular form, "Applicant." For clarity and convenience, we will do the same in this opinion.

[2] Application Serial No. 97104306 was filed November 2, 2021, seeking registration on the Principal Register based on Applicant's claimed bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). On February 13, 2023, Applicant (i) filed an amendment to allege use under Trademark Act Section 1(c), 15 U.S.C. § 1051(c),



The application includes the following mark description and stippling statement:

> The mark consists of a three-dimensional product design of a round pancake consisting of 8 uniform wedges. The broken lines depicting the curved outer edges of the wedges indicate placement of the mark on the goods and are not part of the mark.
>
> The stippling is a feature of the mark and does not indicate color.[3]

Applicant submitted the following specimen showing how the proposed mark is actually used in commerce:[4]



---

claiming December 17, 2022, as both the date of first use anywhere and the date of first use in commerce, and (ii) amended the application to the Supplemental Register.

[3] November 2, 2021 Application at TSDR 1. The Trademark Status and Document Retrieval (TSDR) citations refer to the USPTO's electronic file database for the involved application.

[4] February 13, 2023 Amendment to Allege Use at TSDR 3. Applicant also submitted another specimen, which is essentially identical to the one displayed above without the small condiment containers that appear in the upper portion of the image. *Id.* at 2.

The Trademark Examining Attorney ultimately refused registration of Applicant's proposed mark under (i) Trademark Act Sections 23(c) and 45, 15 U.S.C. §§ 1091(c), 1127, on the ground it is a generic product design configuration and thus fails to function as a trademark, and (ii) Section 23(c), 15 U.S.C. § 1091(c), on the ground that the proposed mark is a functional design for the identified goods.

When the Examining Attorney issued a final refusal of registration, Applicant appealed and requested reconsideration, which the Examining Attorney denied. Applicant then filed an appeal brief, but the Board subsequently granted the Examining Attorney's request to remand the application so that the cited statutory basis for the failure-to-function refusal could be corrected through the issuance of a new Office action.[5] Applicant responded to that Office action and the Examining Attorney issued a subsequent final Office action. The appeal then resumed and Applicant was provided time to file a supplemental brief, but did not do so. The Examining Attorney then filed a brief.

For the reasons explained below, we **affirm** the refusal under Section 23(c) on the ground that Applicant's proposed mark is a functional design for the identified goods. We do not reach the other ground for refusal. *Cf., e.g., In re DTI P'ship LLP*, No.

---

[5] The Examining Attorney explained in the remand request that "the failure to function refusal must be reissued under Trademark Act Sections 23(c) and 45 because the application was amended to seek registration on the Supplemental Register and the final refusal was not issued under the correct statutory basis." 8 TTABVUE 1.

The TTABVUE citations in this opinion refer to entries in the Board's electronic docket. The number preceding "TTABVUE" is the docket entry number and any numbers following indicate the relevant page numbers within the docket entry. *See, e.g., Turdin v. Trilobite, Ltd.*, No. 94002505, 2014 TTAB LEXIS 17, at *6 n.6.

3

76197868, 2003 TTAB LEXIS 171, at *10 (finding applicant's failure to comply with a requirement for information was a sufficient basis to refuse registration, and thus declining to reach an additional ground of refusal based on mere descriptiveness); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE § 1217 (2025) (noting Board's discretion to affirm a refusal of registration based on one of multiple grounds).

## I. Nature of the Proposed Mark

To facilitate our analysis, we first address the nature of Applicant's proposed mark. *See, e.g., In re Palacio Del Rio, Inc.*, No. 88412764, 2023 TTAB LEXIS 183, at *4; *Kohler Co. v. Honda Giken Kogyo K.K.*, No. 91200146, 2017 TTAB LEXIS 450, at *54; *In re Heatcon, Inc.*, No. 85281360, 2015 TTAB LEXIS 360, at *14.

The Trademark Act takes a "flexible approach toward the concept of what constitutes . . . a trademark." *In re Eagle Fence Rentals, Inc.*, No. 73463319, 1986 TTAB LEXIS 57, at *8. This is reflected in its definition of "trademark," which includes not just "any word [or] name," but also any "symbol, or device, or any combination thereof" used "to identify and distinguish . . . goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

Here, the mark drawing and mark description make clear that Applicant's proposed mark is a three-dimensional product design, which Applicant seeks to use as trade dress for the identified goods. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 209 (2000) ("'[T]rade dress' . . . originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded by many courts of

appeals to encompass the design of a product."). The specimens of record confirm that understanding. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1202.02 (Nov. 2025) ("A determination of whether the mark constitutes trade dress must be informed by the application content, including the drawing, the description of the mark, the identification of goods or services, and the specimen, if any.").

In simpler terms, the proposed mark consists of a pancake cut into eight equal or "uniform" wedges. However, we acknowledge Applicant's argument that this broad characterization may not adequately convey all of the claimed features of the proposed mark,[6] or those elements that are depicted in the drawing but not claimed. With that in mind, we note that the mark drawing outlines the round shape of the pancake in dotted lines, indicating Applicant does not claim the round shape as a feature of the mark. *See* Trademark Rule 2.52(b)(4), 37 C.F.R. § 2.52(b)(4) ("The applicant must . . . use broken lines to show any other matter not claimed as part of the mark."). But the mark description does describe the product design as a "round pancake" and claims the wedge shape of the eight equal pieces, as well as their placement in relation to the pancake. This effectively dictates that the pancake will have a generally round shape, which is reflected in the specimens of record.[7] In addition, Applicant has indicated that the stippling displayed in the mark drawing is

---

[6] *See* Applicant's Brief, 6 TTABVUE 3 ("It is worth noting that Applicant's mark is more than just cutting a circular, shared food into eight equal, triangular slices.").

[7] This also takes into account the reality, as shown in the evidence of record, that the process for making pancakes typically results in a round shape. In any event, because Applicant is not claiming the outer shape of the pancake's perimeter as a part of the mark, we are not relying on it in our analysis.

a feature of the proposed mark, representing "a texture" and "a gradient of the texture" of the pancake.[8] As discussed later in this opinion, the claimed "texture" appears to be a texture that is typical of pancakes. Lastly, Applicant points out that the mark drawing shows "a certain proportion of radius to thickness,"[9] which is also generally reflected in the specimens of record.[10]

Now that we have defined the proposed mark for purposes of our analysis, we turn to whether the mark, as a whole, is functional and thus cannot serve as an indicator of source for Applicant's goods.

## II. Functionality

Under the Trademark Act, functional matter may not be registered on either the Principal Register or the Supplemental Register. *See* 15 U.S.C. §§ 1052(e)(5), 1091(c); *Heatcon*, 2015 TTAB LEXIS 360, at *9. Specifically, Section 2(e)(5) provides that "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature **unless it . . . comprises any matter that, as a whole, is functional**." 15 U.S.C. § 1052(e)(5) (emphasis added). Likewise, Section 23(c) allows registration

---

[8] *Id.*

[9] *Id.*

[10] The Examining Attorney asserts that the texture and proportion of radius to thickness of the pancake, which Applicant refers to, "are not claimed in the description of the mark and are not depicted in the specimen of record." Examining Attorney's Brief, 15 TTABVUE 6. However, the mark drawing does include stippling, which is claimed as a feature of the mark, and shows a particular proportion of radius to thickness, both of which are reflected in the specimens of use. *See In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1371 (Fed. Cir. 2012) (noting, without objection, that the Board considered elements of the proposed design that were reflected in the mark drawing but not recited in the mark description).

6

on the Supplemental Register of "any trademark, symbol, label, package, configuration of goods, name, word, slogan, phrase, surname, geographical name, numeral, device, **any matter that as a whole is not functional**, or any combination of any of the foregoing, but such mark must be capable of distinguishing the applicant's goods or services." 15 U.S.C. § 1091(c) (emphasis added).

Regardless of the statutory basis for refusal, the rationale is the same: Functional matter cannot serve as an indicator of source for goods. *See Qualitex v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (noting that a functional product feature "cannot serve as a trademark"); *In re Penthouse Int'l, Ltd.*, 565 F.2d 679, 681 (CCPA 1977) ("A feature dictated solely by 'functional' (utilitarian) considerations may not be protected as a trademark . . . ." (quoting *In re Deister Concentrator Co.*, 289 F.2d 496, 502 (CCPA 1961)). Therefore, the caselaw applying Section 2(e)(5) to potentially functional matter is equally applicable to functionality refusals under Section 23(c). *See Heatcon*, 2015 TTAB LEXIS 360, at *12 (noting that, even where the application seeks registration on the Supplemental Register, "and the statutory authority for refusal is Section 23, the case law applying Section 2(e)(5) and addressing functionality refusals . . . remains equally applicable because the issue, functionality, is the same").

In addition, according to that caselaw, matter is functional "'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex*, 514 U.S. at 165 (quoting *Inwood Labs. v.*

7

*Ives Labs.*, 456 U.S. 844, 850 n.10 (1982)). To determine whether a particular product design is functional, we consider the evidence and arguments of record in view of the evidentiary considerations set forth in *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332 (CCPA 1982), which we refer to as the "*Morton-Norwich* factors." *See, e.g.*, *Heatcon*, 2015 TTAB LEXIS 360, at *12 (considering factors set forth in *Morton-Norwich* to determine functionality).

Specifically, under the *Morton-Norwich* factors, we take into account:

(1) the existence of a utility patent disclosing the utilitarian advantages of the design;

(2) advertising materials in which the originator of the design touts the design's utilitarian advantages;

(3) the availability to competitors of functionally equivalent designs; and

(4) facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product.

*Becton*, 675 F.3d at 1374 (citing *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed. Cir. 2002)); *see Morton-Norwich*, 671 F.2d at 1340-41.

"It is not required that all four factors be proven in every case, nor do all four factors have to weigh in favor of functionality to support a refusal." *Heatcon*, 2015 TTAB LEXIS 360, at *13-14. Moreover, these factors are not exclusive, as, ultimately, the functionality determination "'depends on the totality of the evidence.'" *Id.* at 813 (quoting *Valu Eng'g*, 278 F.3d at 1273).

### A. Existence of a Utility Patent for the Design Claimed in the Mark

A utility patent covering the claimed features may be strong evidence of the functionality of those features. *See TrafFix Devices v. Mktg. Displays*, 532 U.S. 23,

29-30 (2001). On the other hand, the absence of a utility patent covering the claimed features of a proposed mark does not, by itself, establish that the proposed mark is nonfunctional. *See id.* at 35; *In re Gibson Guitar Corp.*, No. 75513342, 2001 TTAB LEXIS 835, at *4 n.3 ("Although the existence of a utility patent could weigh against applicant in terms of showing that the configuration is de jure functional, the absence of such a patent simply has no weight in our analysis.").

Here, the record does not contain any evidence of the existence of a utility patent for the features claimed in Applicant's proposed mark, and neither the Examining Attorney nor Applicant otherwise address the first factor in their briefs.[11] Therefore, this factor is inapplicable.

### B. Advertising Touting the Utilitarian Advantages of the Design Claimed in the Mark

Next, we consider any advertising materials of record "in which the originator of the design touts the design's utilitarian advantages." *Becton*, 675 F.3d at 1374. Under this factor, the Examining Attorney points to a "Brand Style Guide" produced and made of record by Applicant, explaining how to "message" the features and benefits of a pancake sold in sliced form.[12] Specifically, this guide indicates that such a pancake should be touted as a "new team-sized meal option" that is "shareable,"

---

[11] During prosecution, the Examining Attorney's first Office action included an information requirement, which, inter alia, requested "[a] written statement as to whether the applied-for mark, or any feature(s) thereof, is or has been the subject of a design or utility patent or patent application." August 12, 2022 Nonfinal Office Action at TSDR 3. In response to this requirement, Applicant answered "None." February 13, 2023 Response to Nonfinal Office Action at TSDR 19. We interpret Applicant's response as indicating that the mark, or any feature of it, is not and was not the subject of a design or utility patent or patent application.

[12] *See* February 13, 2023 Response to Nonfinal Office Action at TSDR 8.

"dippable," and "[a]ny time-able."[13] As to the "slice" format, in particular, the guide emphasizes messaging such as "Why stack your pancakes when you can share them by the slice?" and "Save a few slices for tomorrow."[14] The guide also suggests advertising a sliced pancake as "being meant for life on the go."[15]

While the "Brand Style Guide" is somewhat inchoate,[16] and appears to be for internal use by Applicant and perhaps its affiliates, it nonetheless reflects Applicant's own understanding and explanation of the advantages of the proposed pancake product design and Applicant's plans for advertising those advantages to others.[17] Applicant elaborated on this explanation in response to the Examining Attorney's request for additional information about the features embodied in the proposed mark.[18] Among other things, Applicant stated that "[t]he pancake . . . experience extends beyond the sit-down to eat experience," likening it to a "social pizza eating experience where everyone grabs a slice and dips it into sauce," and thus "[t]here isn't a need for a plate or utensils."[19] Applicant further explained that the claimed "design

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] One of the guide's pages includes placeholder language instead of actual relevant text. *See id.* at 13.

[17] For this reason, we find the "Brand Style Guide" to be probative on the question of functionality, regardless of whether it is perhaps more accurately characterized as something other than "advertising." *See In re OEP Enters.*, No. 87345596, 2019 TTAB LEXIS 278, at *11 ("The *Morton-Norwich* categories 'are not exclusive, however, for functionality depends upon the totality of the evidence.'" (quoting *Kohler*, 2017 TTAB LEXIS 450, at *62)).

[18] *See* February 13, 2023 Response to Nonfinal Office Action at TSDR 19-21.

[19] *Id.* at 19-20.

allows pancakes . . . to be eaten seated, standing up, or walking," such that "[n]o utensils are needed, and it targets a family-sized serving."[20] According to Applicant, the "design allows family members to reach in to grab a slice or use a pie server to obtain a piece" of the pancake and enables "d[]ipping into a sauce such as maple syrup or blueberry compote."[21]

Applicant is not the only one to "tout[] the design's utilitarian advantages." *Becton*, 675 F.3d at 1374. The Examining Attorney has made of record excerpts from fourteen third-party websites, featuring pancake recipes and including photographs of pancakes cut into roughly equal wedges, often eight equal wedges.[22] Some of these photographs,[23] reproduced below, show how serving pancakes in this form allows each wedge to be topped with a different topping. Indeed, the website featuring the photograph on the left below calls its wedged pancake creation a "Breakfast Pancake Pizza" and encourages the reader to "[t]urn an ordinary pancake into a pizza with endless amounts of toppings."[24] The website featuring the photograph on the right below notes that the provided recipe turns a "healthy banana oat pancake . . . into a fruity pancake pizza with a selection of delicious toppings."[25]

---

[20] *Id.* at 20.

[21] *Id.* at 21. Although Applicant uses the wording "dripping," "dipping" appears to be what Applicant intended.

[22] *See* August 23, 2023 Final Office Action at TSDR 8-157.

[23] *Id.* at 21, 33.

[24] *Id.* at 19.

[25] *Id.* at 25.

11

 

The Examining Attorney also made of record the Facebook post below, from a third-party pancake restaurant, which suggests that the "method" involving the slicing of a pancake into eight wedges "seems to have merit, especially for sharing!"[26]



---

[26] *Id.* at 89 (highlighting added).

Having reviewed all evidence and arguments relevant to the second *Morton-Norwich* factor, we agree with the Examining Attorney that Applicant's own marketing materials and statements directly address, and express, the utilitarian advantages of the proposed product design, namely, facilitating more convenient serving, sharing, consumption, and transporting of the pancake. *Cf., e.g., In re Loggerhead Tools, LLC*, No. 85700986, 2016 TTAB LEXIS 260, at *9-12 (finding instances of applicant touting a utilitarian advantage of the claimed motion feature of a tool persuasive in the functionality determination); *Heatcon*, 2015 TTAB LEXIS 360, at *22-24 (deeming references in applicant's brochure to the utilitarian advantages of the claimed design to be probative). And the third-party evidence discussed above provides additional support for the conclusion that the product design embodied in the proposed mark offers certain utilitarian advantages, namely, shareability and customization of toppings on the individual wedges or slices. *See, e.g., Heatcon*, 2015 TTAB LEXIS 360, at *25-26 (considering third-party references to the advantages of the design at issue).

We find that Applicant's arguments to the contrary—that "there is no practical advantage to the [design's] eight equal slices" and that the claimed design would "not confer any functional benefit like easier handling or consumption"[27]—contradict its own materials and prior statements in the record, which clearly emphasize the utility

---

[27] Applicant's Brief, 6 TTABVUE 9. Applicant argues that eight equal slices are claimed in the proposed product design and that the "consumer wouldn't be disadvantaged if the pancake was served whole or in fewer slices." *Id.* We address these arguments later in this opinion.

of a design that provides individual slices, particularly equal slices. *See Kistner Concrete Prods. v. Contech Arch. Techs., Inc.*, No. 92048733, 2011 TTAB LEXIS 8, at *41 ("If a seller advertises the utilitarian advantages of a particular feature of its product, this constitutes strong evidence of functionality.").

Accordingly, this *Morton-Norwich* factor strongly supports a conclusion that the applied-for mark is functional.

### C. Availability of Functionally Equivalent Designs

The third factor to consider is the availability of designs that are functionally equivalent to the design claimed in the proposed mark. *See Becton*, 675 F.3d at 1374. Applicant argues that "there [are] many ways to present pancakes and that using 8 slices is only one of many," pointing to the evidence of record, which "shows many alternative ways of presenting pancakes (sometimes 6, sometimes 7 and sometimes 10 slices, sometimes with fruit placed on top, etc.)."[28] Applicant also made of record a number of third-party website excerpts including photographs of pancakes presented in a stacked configuration, in some cases with a wedge cut out of the entire stack.[29] For example:[30]

---

[28] *Id.* at 10.

[29] *See* July 18, 2023 Response to Nonfinal Office Action at TSDR 11-37.

[30] *Id.* at 11, 22, 29, 33.









In short, Applicant's evidence can be categorized into two general types of proposed alternative designs: (1) a stacked configuration (sometimes with wedges cut from the entire stack) and (2) a sliced, but not stacked, configuration with more, or fewer, than eight slices. According to Applicant, this evidence shows that there are alternative designs in terms of presenting pancakes, such that "there is no 'competitive need' in the industry for the Applicant's particular product design."[31]

The Examining Attorney, on the other hand, argues that we need not consider the availability of alternative designs at all because the other evidence of record, particularly Applicant's own statements and marketing materials, establishes the functionality of the features embodied by the proposed product design.[32] In pressing this argument, the Examining Attorney relies on the general principle that the "availability of alternative designs does not convert a functional design into a non-functional design." *Kohler*, 2017 TTAB LEXIS 450, at *111 (quoting *Kistner*, 2017 TTAB LEXIS 450, at *53).

We agree with the Examining Attorney that, as a general matter, alternative designs need not be considered if the other evidence of record establishes functionality. *See Becton*, 675 F.3d at 1376 (stating that there is no need to consider availability of alternative designs "if functionality is found based on other considerations"). However, for completeness we have considered all of the evidence of record, including Applicant's evidence of potential alternative designs. *See Valu*

---

[31] Applicant's Brief, 6 TTABVUE 10.

[32] *See* Examining Attorney's Brief, 15 TTABVUE 11.

*Eng'g*, 278 F.3d at 1273 ("Functionality is a question of fact, and depends on the totality of the evidence." (internal citations omitted)); *see also Becton*, 675 F.3d at 1376 (noting that the Board considered evidence of potential alternative designs even though functionality could be found based on other considerations).

Applicant's evidence and arguments do not convince us that the availability of alternative designs renders the proposed product design nonfunctional. To be relevant in our analysis, the alternative designs proffered by Applicant must be "functionally equivalent" to the design in the proposed mark. *Becton*, 675 F.3d at 1374; *see also Heatcon*, 2015 TTAB LEXIS 360, at *30-33 (finding evidence of alternative designs unpersuasive because the designs did not "provide the same utilitarian benefit"). Here, in Applicant's own words, the design embodied in the proposed mark "allows pancakes . . . to be eaten seated, standing up, or walking," such that "[n]o utensils are needed, and it targets a family-sized serving," "allow[ing] family members to reach in to grab a slice or use a pie server to obtain a piece" of the pancake and dip it "into a sauce such as maple syrup or blueberry compote."[33] And, as mentioned above, some of the Examining Attorney's evidence of record demonstrates that the sliced configuration, particularly when applied to larger pancakes, allows each slice to be customized with different toppings, thus catering to individual preferences. Applicant has not established that the alternative stacked configuration offers the same utilitarian benefits as the proposed design, at least with respect to facilitating more convenient serving, sharing, consuming, and transporting

---

[33] February 13, 2023 Response to Nonfinal Office Action at TSDR 20-21.

of the pancake. Thus, we do not consider the stacked configuration to be a functionally equivalent design.

Applicant's other proposed alternative design—pancakes sliced but not stacked—differs from Applicant's design only in terms of the number of slices in the pancake. Applicant focuses on the fact that eight equal slices are claimed in the applied-for product design, arguing that the "consumer wouldn't be disadvantaged if the pancake was served whole or in fewer slices, but the eight slices become a unique characteristic that identifies the pancake product."[34] Again, however, we must consider the utilitarian advantages of the configuration claimed in the proposed mark. And we find that, consistent with the statements made in Applicant's "Brand Style Guide" and in its response to the Examining Attorney's request for information, both the drawing of the mark and the specimens of use show that the eight equal slices claimed in the applied-for configuration can result in eight appropriately-sized servings, especially when the pancake is large (or family-size) and shared among a group of people. As Applicant itself states, "[t]he number of slices in a pancake is usually determined by practical considerations, like the size of the pancake, [or] the desired portion size."[35]

On that point, we acknowledge that, depending on the size of the pancake, six equal slices or ten equal slices, for instance, might provide similar functionality as Applicant's design, but, when it comes to family-size, or shareable, pancakes, such as

---

[34] Applicant's Brief, 6 TTABVUE 9.

[35] *Id.* at 8.

the one featured in Applicant's specimens of use, the eight-equal-slices configuration is one of a very few superior designs for the utilitarian advantages Applicant itself touts. This same eight-slice configuration is commonly used with pizzas, pies, and cakes, as shown in the Examining Attorney's evidence.[36] Therefore, allowing "exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage," *Qualitex*, 514 U.S. at 165, and thus hinder competition. *See In re Bose*, 772 F.2d 866, 872 (Fed. Cir. 1985) ("If the feature asserted to give a product distinctiveness is the best, or at least one, of a few superior designs for its *de facto* purpose, it follows that competition is hindered. *Morton-Norwich* does not rest on total elimination of competition in the goods."); *In re Van Valkenburgh*, No. 77025789, 2011 TTAB LEXIS 1, at *20 ("[T]he mere fact that other designs are available does not necessarily mean that applicant's design is not functional.").

Accordingly, we find that this factor supports a conclusion that the proposed mark is functional.

### D. Whether the Method of Manufacturing is Comparatively Simple or Cheap

Under the fourth *Morton-Norwich* factor, evidence demonstrating that a proposed design results from a comparatively simple or cheap method of manufacture may support a conclusion that the design is functional. *See Kohler*, 2017 TTAB LEXIS 450, at *113 (indicating that "evidence that a product feature makes the product cheaper to manufacture may be probative in showing functionality"). However, even if a

---

[36] *See, e.g.*, April 18, 2023 Nonfinal Office Action at TSDR 8-9, 31-32, 47-48, 60-61, 74-75.

design actually costs more to produce, that higher cost does not necessarily render the design nonfunctional if it otherwise results in a product of superior quality. *See OEP Enters.*, 2019 TTAB LEXIS 278, at \*44-45 ("[E]vidence that a design costs more, or has no impact on cost, is irrelevant if the design is found to work better."); *Kohler*, 2017 TTAB LEXIS 450, at \*113-14 (indicating that "evidence that [a design] does not affect its cost is not necessarily proof of nonfunctionality").

Neither the Examining Attorney nor Applicant point to any evidence concerning the cost or complexity of producing pancakes with the design in the proposed mark, nor did we find any in the record. Applicant merely argues that "due to the arbitrariness of the eight slices design . . . it could not possibly affect the cost or quality of pancakes."[37] In view of our discussion above, we do not agree that the design is arbitrary. But we find that there is nothing in the record to support a finding that the comparative cost or complexity of a design that involves cutting a round pancake into eight equal slices is a probative factor on the question of functionality here.

### E. Other Considerations

#### 1. Texture Claimed as a Feature of the Mark

As we mentioned above, the application includes a statement that the stippling in the mark drawing is a feature of the mark, and Applicant has explained that the stippling represents "a texture" and "a gradient of the texture" of the pancake.[38] In other words, Applicant is claiming the texture of the pancake as a feature of the

---

[37] Applicant's Brief, 6 TTABVUE 9 (emphasis omitted).

[38] *Id.* at 3.

product design embodied in the mark. However, based on the many other photographs of pancakes in the record, we find that the texture Applicant claims is simply the texture that typically results from the process of making pancakes. In other words, it is akin to a by-product of the manufacturing process. Therefore, we find that the claimed texture feature is functional.[39] *Cf., e.g., McGowen Precision Barrels, LLC v. Proof Rsch., Inc.*, No. 92067618, 2021 TTAB LEXIS 167, at *80, *84-85 (finding respondent's trade dress functional because, inter alia, it resulted from the manufacturing process for the relevant products); *Saint-Gobain Corp. v. 3M Co.*, No. 91119166, 2007 TTAB LEXIS 82, at *78 (finding the purple color of applicant's sandpaper functional where, inter alia, it was a natural by-product of the manufacturing process).

### 2. Applicant's Intent

Applicant argues that "[c]utting circular pancakes into eight equal, triangular slices is a decision that applicant made not out of necessity or practicality, but with the intention of creating a distinct product presentation that would identify and distinguish its goods (pancakes) in the market."[40] According to Applicant, "[t]his makes it an arbitrary choice serving as a trademark."[41]

However, as the Examining Attorney correctly counters, a product design may be functional regardless of an applicant's intent in adopting it and irrespective of the

---

[39] Similarly, based on the evidence of record, we view the mark drawing's depiction of the pancake's "certain proportion of ratio to thickness" (Applicant's Brief, 6 TTABVUE 3) as representative of a pancake's typical shape.

[40] Applicant's Brief, 6 TTABVUE 8 (emphasis deleted).

[41] *Id.* (emphasis deleted).

actual practicality of the design. *See, e.g., OEP Enters.*, 2019 TTAB LEXIS 278, at

*44-45 (indicating that a design may be functional even if it costs more to produce);

*In re Pingel Enter. Inc.*, No. 74421666, 1998 TTAB LEXIS 21, at *39 ("That applicant,

despite the inherent advantages of a design which is simple and less expensive to

manufacture than other petcocks, has, however, deliberately chosen a more complex

and expensive manner in which to manufacture its product does not mean that the

configuration thereof is not de jure functional."). In any event, Applicant's arguments

regarding the reasons for adopting the mark are belied by its own prior statements

and marketing materials touting the utilitarian advantages of the product design.

### 3. Prior Third-Party Registrations

Applicant made of record a handful of prior third-party registrations issued by the

USPTO for marks that Applicant characterizes as "configurations for food products,"

and asserts that these prior registrations justify registration of Applicant's proposed

mark.[42] While Applicant appears to have submitted these registrations to argue

against the Examining Attorney's other ground for refusal, we nonetheless note that

we are not persuaded by this evidence when it comes to functionality. First, the

registrations are for different marks with different features, which are applied to

different goods. Second, even if the marks were similar, we are not bound by prior

decisions of examining attorneys to register other marks. *In re Nett Designs Inc.*, 236

F.3d 1339, 1342 (Fed. Cir. 2001) ("Even if some prior registrations had some

---

[42] *Id.* at 6-7.

characteristics similar to [Applicant's] application, the [USPTO's] allowance of such prior registrations does not bind the Board or this court.").

## III. Conclusion

Based on all of the arguments and evidence of record, which we have considered in relation to the *Morton-Norwich* factors, we find that the proposed mark comprises matter that, as a whole, is functional as applied to the identified goods. Applicant's own marketing materials and statements tout the product design's utilitarian advantages, namely, facilitating more convenient serving, sharing, consuming, and transporting of the pancake. And the evidence shows that the product design embodied in the proposed mark is one a very few superior designs that can provide those advantages. In other words, cutting pancakes, especially larger ones, into eight equal slices provides certain utilitarian advantages that cannot be realized through most other potential designs. *See Bose*, 772 F.2d at 872. Thus, registration of the proposed mark must be refused to "protect[] competitors against a disadvantage (unrelated to recognition or reputation) that trademark protection might otherwise impose, namely their inability reasonably to replicate important non-reputation-related product features." *Qualitex*, 514 U.S. at 169.

**Decision**: We **affirm** the refusal to register Applicant's proposed mark under Trademark Act Section 23(c) on the ground that it is a functional design for the identified goods. We therefore do not reach the refusal under Trademark Act Sections 23(c) and 45, on the ground that the proposed mark is a generic product design configuration and fails to function as a trademark for the identified goods.